**Office of Disciplinary Counsel v. Jones**

Disciplinary Board Docket no. 133 D.B. 2003, 1 D.B. 2004.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

NEWMAN, *Member,* November 29, 2004—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On September 15, 2003, Office of Disciplinary Counsel filed a petition for discipline at 133 D.B. 2003 against Floyd Paul Jones, respondent. The petition charged respondent with violations of the Rules of Professional Conduct in four separate matters. On September 26, 2003, petitioner filed a petition for emergency temporary suspension with the Supreme Court of Pennsylvania. The court issued a rule to show cause on October 9, 2003. On October 31, 2003, the Supreme Court granted the petition for emergency suspension and suspended respondent until further order of the court. Thereafter, petitioner filed a second petition for discipline at 1 D.B. 2004 on January 7, 2004, involving three additional matters, and a motion to consolidate, which was granted by order of the Disciplinary Board on February 27, 2004. Respondent did not file answers to the petitions for discipline.

A disciplinary hearing was held on May 12, 2004, before Hearing Committee 3.08 comprised of Chair Wayne M. Pecht, Esquire, and Members Randall G. Gale, Esquire, and Ronald M. Katzman, Esquire. Respondent did not appear at the hearing.

The Hearing Committee filed a report on August 4, 2004, finding that respondent violated the Rules of Professional Conduct as charged in the petitions and recommending that respondent be disbarred.

No briefs on exceptions were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of September 27, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at 200 North Third Street, Suite 1400, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, Floyd Paul Jones, was born in 1948 and was admitted to practice law in the Commonwealth of Pennsylvania in 1976. His most current attorney registration address is 158 Bowman Road, Apt. 6, Hanover, PA 17331.

(3) Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(4) Respondent has a prior history of discipline consisting of two informal admonitions administered in 2002.

(5) Petitioner sent copies of the petitions for discipline at 133 D.B. 2003 and 1 D.B. 2004 via first class mail and certified mail to respondent's last known home registration address and his last known business registration address, pursuant to the requirements of Disciplinary Board Rule §90.1 and Pa.R.D.E. 212.

(6) The petitions for discipline were returned as undeliverable or unable to forward.

(7) Petitioner made good faith attempts to find respondent by contacting the U.S. Post Office, the York County Sheriff's office, and York County District Attorney's office, going to respondent's residence and speaking to respondent's neighbors.

(8) Respondent has four outstanding warrants issued for his arrest.

### Charge I—Latchaw Matter

(9) In file number C3-02-311, respondent was charged with violations of Rules of Professional Conduct 1.3, 1.4(a), and 1.4(b) for failing to file a brief on Robert Latchaw's driver's license appeal, failing to keep his client informed of the status of his matter, failing to provide information so that his client could make informed decisions about the case, failing to advise his client that his appeal had been lost, failing to return his client's file and failing to return unearned fees.

(10) Petitioner recommended that respondent receive an informal admonition for his misconduct conditioned

upon respondent's refund of $3,050 fees to his client and return of his client's file. Reviewing authorities approved the informal admonition and conditions.

(11) On October 30, 2002, an investigator with the Office of Disciplinary Counsel personally served respondent with a letter from Chief Disciplinary Counsel dated October 15, 2002, informing him of the informal admonition scheduled for November 8, 2002, and the conditions.

(12) Respondent appeared for his informal admonition on November 8, 2002. However, he was not prepared to pay the restitution and claimed that he could not find Mr. Latchaw's file.

(13) As a result of respondent's failure to comply with either condition of the informal admonition, it was rescheduled for December 9, 2002.

(14) Respondent appeared for his informal admonition on December 9, 2002, without having complied with either condition.

(15) Even though respondent had not satisfied the conditions, Chief Disciplinary Counsel and respondent agreed that the informal admonition would be and was imposed on December 9, 2002. Respondent agreed that he would repay his client in installments.

(16) By letter dated December 9, 2002, Chief Disciplinary Counsel confirmed this agreement.

(17) Respondent failed to pay any of the restitution, nor did he return Mr. Latchaw's file.

*Charge II—Smith Matter*

(18) Steven Allen Smith was charged with various criminal charges in Adams County. He was also charged with escape from the Adams County Prison.

(19) On January 17, 2002, Mildred Kline, Melissa Smith and Rosalie Walters, family members of Mr. Smith, retained respondent to defend Mr. Smith against the charges.

(20) Respondent agreed to handle pretrial, trial and sentencing matters for a flat fee of $850.

(21) Even though respondent had not previously represented Mr. Smith, respondent did not communicate the basis or rate of his fees in writing within a reasonable time after beginning the representation.

(22) Respondent received payment in full of his fee by January 25, 2002.

(23) On February 4, 2002, respondent represented Mr. Smith at the preliminary hearing. One charge was dropped and the rest were bound over for trial.

(24) Respondent appeared at the arraignment of Mr. Smith's escape charge on July 31, 2002. Mr. Smith pleaded not guilty and trial was scheduled for September 23, 2002.

(25) The arraignment for the other charges was rescheduled for September 20, 2002, at respondent's request.

(26) Mr. Smith's family members attempted to contact respondent on various occasions, but were not able to do so, and, on one occasion when Ms. Kline called, she got a recording that respondent's telephone had been disconnected.

(27) Rosalie Walters attempted to call respondent approximately 20 times between August and September 2002 and left messages, which were never returned.

(28) Several family members went to see respondent in person at his office and were never able to contact him at that location.

(29) By letter dated September 18, 2002, Mildred Kline notified respondent that his services were no longer needed. She requested a refund of unearned fees no later than October 3, 2002.

(30) Respondent failed to respond to Ms. Kline's letter and failed to provide an accounting or a refund of unearned fees.

(31) On December 17, 2002, Rosalie Walters sued respondent for a refund of fees. Respondent failed to appear in court on January 21, 2003, and the case was rescheduled for January 28, 2003.

(32) On January 28, 2003, a default judgment of $500 plus costs of $56 was entered against respondent. He failed to pay that judgment.

*Charge III—Stables Matter*

(33) On October 9, 2002, Sheila M. Stables called respondent's office regarding her son's criminal case in York County and left a message on respondent's answering machine.

(34) On October 10, 2002, a woman claiming to be respondent's secretary called Ms. Stables and informed her that respondent was going to the York County Prison on October 11, 2002, and that respondent would talk to

Ms. Stables' son if she paid $50. The secretary advised Ms. Stables to bring the money to respondent's home.

(35) Ms. Stables personally delivered a $50 money order to respondent's home address and gave the money to respondent's secretary. The money order was cashed on October 17, 2002.

(36) On October 11, 2002, Ms. Stables called respondent's home to ascertain what respondent had learned from the meeting with Ms. Stables' son.

(37) Respondent did not meet with Ms. Stables' son.

(38) Ms. Stables called respondent's office and home at least three times following the October 11, 2002 call and was unable to speak to respondent.

(39) On October 17, 2002, Ms. Stables spoke to respondent's secretary and was informed that respondent was going to York County Prison the next day and Ms. Stables' son was first on the list to visit.

(40) At no time did respondent meet with Ms. Stables' son.

(41) During the week following the October 17, 2002 call, Ms. Stables called respondent's home and office at least eight times to check on the status of her son's case.

(42) On October 28, 2002, Ms. Stables' son informed her that he had an upcoming court appearance. Ms. Stables called respondent and left an urgent message. Respondent did not return her telephone call.

(43) Over the next several days, Ms. Stables called respondent at least once a day and left a message each time.

(44) On October 31, 2002, Ms. Stables' son entered a guilty plea in his case. Following her son's plea, Ms.

Stables called respondent's office and left a message requesting a refund of the $50.

(45) By certified letter dated October 31, 2002, Ms. Stables requested that respondent send her a refund. This letter was returned as unclaimed.

(46) Respondent has failed to refund the $50 to Ms. Stables.

*Charge IV—ODC Matter*

(47) On May 7, 2002, Tracy L. Jones filed a complaint for spousal support against respondent in the Court of Common Pleas of York County Domestic Relations division.

(48) On May 21, 2002, Judge John S. Kennedy dismissed the complaint without prejudice due to the fact that Ms. Jones submitted a letter stating that the parties had reached a private agreement.

(49) On September 5, 2002, Ms. Jones again filed a complaint for spousal support against respondent.

(50) On December 9, 2002, Judge Kennedy ordered respondent to pay $840 a month for spousal support plus $50 in arrears. He was also ordered to pay $2,616 in arrears, due immediately.

(51) On February 11, 2003, respondent was ordered to appear in person on March 10, 2003, as a result of his willful failure to obey the order of December 9, 2002.

(52) Respondent was found to be in contempt of court for failure to make regular and timely support payments.

(53) Respondent was ordered to report all status changes to Domestic Relations, pursuant to the court order.

(54) Respondent was personally served with documents relating to the contempt, but refused to sign for service.

(55) A compliance hearing was held on April 16, 2003.

(56) Respondent declared in open court that he would not pay pursuant to the support order. The Honorable John W. Thompson Jr. sentenced respondent to serve six months in prison for failure to make timely support payments. The court set as a purge condition that respondent be given an opportunity to work as an out-mate for 120 days or pay a cash purge of $2,500.

(57) On June 6, 2003, respondent paid the cash purge.

*Charge V—Knaub Matter*

(58) On July 21, 2003, Deborah Knaub telephoned respondent's office to arrange for him to consult with her son, who was incarcerated at York County Prison on pending criminal charges.

(59) Respondent's secretary advised Ms. Knaub to bring $100 to the York County Courthouse the next day and respondent would meet with Ms. Knaub.

(60) Ms. Knaub met with respondent and his secretary and gave him $100 to go to the prison and consult with her son, Bradley Markle.

(61) Respondent advised Ms. Knaub that he would visit her son on either July 24 or 25, 2003.

(62) Respondent failed to go to the prison and see Bradley Markle.

(63) Ms. Knaub telephoned respondent at least 40 times to find out the reason why he did not see her son.

(64) Respondent failed to return any of Ms. Knaub's messages.

(65) Ms. Knaub went to respondent's office and left a note for him.

(66) Respondent failed to respond to that message.

(67) Ms. Knaub subsequently received a message telling her that respondent had been evicted from his law office.

(68) Respondent failed to ever consult with Bradley Markle or contact Ms. Knaub.

### Charge VI—Wilson Matter

(69) Lisa Wilson retained respondent to represent her boyfriend, Keith Beard, in a child custody matter.

(70) Respondent agreed to write a letter on behalf of Mr. Beard to his ex-wife, for a fee of $50.

(71) Ms. Wilson paid respondent $50 and received a receipt.

(72) Ms. Wilson also retained respondent to represent her at a preliminary hearing on a theft charge.

(73) Ms. Wilson paid respondent $50 and agreed to pay an additional $150 on the day of the preliminary hearing, which was June 20, 2003.

(74) Respondent failed to appear at the preliminary hearing.

(75) Ms. Wilson went to respondent's office that same day to give respondent a check for $150, and to inform him that the preliminary hearing was rescheduled for August 8, 2003.

(76) Respondent failed to write the letter for Mr. Beard.

(77) Since respondent had not performed any of the legal work for Ms. Wilson or Mr. Beard, she requested that he return the $250. Respondent agreed to do so.

(78) Respondent failed to return Ms. Wilson's money.

*Charge VII—Martinez Matter*

(79) In May 2003, Rafael Martinez retained respondent to collect a $490 unpaid bill for car repairs.

(80) Mr. Martinez paid respondent $50 cash to write a letter to the delinquent customer.

(81) Respondent failed to write the letter.

(82) Around the same time, Mr. Martinez had outstanding fines and court costs owed to the York County Clerk of Courts as a result of his criminal convictions in the early 1980s.

(83) Mr. Martinez asked respondent for assistance in the process of paying off the fines and costs.

(84) On May 3, 2003, respondent met with Mr. Martinez and told him to write a check payable to him in the amount of $1,970. This represented the amount in fines and costs and approximately $100 as a fee for respondent taking the check to the courthouse.

(85) Respondent told Mr. Martinez that the court would not accept a check drawn against his business.

(86) Mr. Martinez issued a check payable to respondent in the amount of $1,970.

(87) Following receipt of the check, respondent cashed it but failed to pay the fines and court costs.

(88) Respondent retained the funds.

(89) Approximately two weeks after issuing the check, Mr. Martinez attempted to contact respondent at his North Adams Street office.

(90) Mr. Martinez was unable to contact respondent.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.1—A lawyer shall provide competent representation to a client.

(2) R.P.C. 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client.

(3) R.P.C. 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(4) R.P.C. 1.4(b)—A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation.

(5) R.P.C. 1.15(b)—Upon receiving funds or other property in which a client or third party has an interest, a lawyer shall promptly notify the client or third person. A lawyer shall promptly deliver to a client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client

or third person, shall promptly render a full accounting regarding such property.

(6) R.P.C. 1.16(d)—Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

(7) R.P.C. 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

(8) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(9) Pa.R.D.E. 203(b)(3)—Willful violation of any other provision of the Enforcement Rules shall be grounds for discipline.

(10) Pa.R.D.E. 204(b)—Failure to comply with a condition attached to an informal admonition shall be grounds for reconsideration of the matter and prosecution of formal charges.

## IV. DISCUSSION

This matter is before the Disciplinary Board on two petitions for discipline charging respondent with multiple violations of the ethical rules in six separate client matters and in a contempt proceeding before the York County Court of Common Pleas. Respondent has not contested any of the charges against him and did not appear for either the pre-hearing conference or the disci-

plinary hearing. The record shows that respondent received proper notice of the petitions for discipline and proper notice of the pre-hearing conference and disciplinary hearing.

A brief summary of respondent's misconduct demonstrates that he converted funds in the amount of $1,970 belonging to Mr. Martinez and failed to refund unearned fees to five other clients. Respondent made a misrepresentation to Mr. Martinez in order to induce him to write a check payable to respondent. In each of these cases, respondent was paid to handle the representation and utterly failed to take any action on behalf of his clients. Respondent received an informal admonition in March 2002 and an informal admonition in December 2002 as a result of neglect and lack of communication with respect to other clients. With regard to the informal admonition administered in December 2002, although Chief Disciplinary Counsel imposed the discipline, respondent failed to comply with his obligation to refund unearned fees to his client, Mr. Latchaw. His failure to comply with this condition resulted in formal charges brought in that matter, which is discussed in the above findings of fact.

Respondent has neglected personal obligations, as well as professional ones. He owes over $10,000 in support arrears and was found in contempt of court for his failure to make timely and regular support payments pursuant to court order. Respondent has been evicted from his law office and failed to pay a judgment to his landlord in the amount of $1,275. Respondent's current whereabouts are unknown. He has abandoned his law practice and never notified his clients that he was leaving. At the time

he disappeared, he had 11 cases on the York County criminal docket. Respondent has four arrest warrants issued for him: two warrants were issued as a result of respondent passing six bad checks, a third warrant was issued for respondent's failure to pay the $10,000 in support and a fourth warrant was issued for stealing $2,236 from his client by failing to make required disposition of those funds. Respondent was placed on emergency temporary suspension by the Supreme Court in order to protect the public.

The Disciplinary Board has considered cases in which a lawyer has committed multiple acts of misconduct, then abandoned his or her practice and disappeared. In the recent matter of *In re Roe,* the attorney failed to preserve client funds and converted them to his own use. He abandoned his practice without attending to any details of closing his office, such as notifying his clients and the court, refunding unearned fees and withdrawing his appearances. The board found that such irresponsible behavior rendered the attorney unfit to practice law. This attorney was disbarred. In another matter, *In re Anonymous No. 75 D.B. 94 and 7 D.B. 95,* 34 D.&C.4th 32 (1996), an attorney was convicted of bad check charges, then disappeared, leaving behind clients who had paid for her representation which was not forthcoming. The Supreme Court disbarred her. Lawyers who misappropriated entrusted funds and then disappeared were disbarred in the matters of *In re Anonymous No. 34 D.B. 91,* 15 D.&C.4th 495 (1992), and *In re Anonymous No. 30 D.B. 87,* 49 D.&C.3d 1 (1988). A lawyer was disbarred after he walked away from his practice, failed to complete work or refund fees he received from five clients,

and failed to participate in the disciplinary process. *In re Anonymous No. 101 D.B. 92,* 23 D.&C.4th 168 (1994).

There is no doubt that respondent's misconduct warrants disbarment. He has ill-served his clients in every way possible. His act of abandoning his practice shows a flagrant disregard for his clients and the court system. His nonappearance at his disciplinary hearing demonstrates a lack of interest in his law license. The record is abundantly clear that respondent is unfit to engage in the practice of law.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the respondent, Floyd Paul Jones, be disbarred from the practice of law.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Nordenberg did not participate in the September 27, 2004 adjudication.

## ORDER

And now, March 11, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated November 29, 2004, it is hereby ordered that Floyd Paul Jones be and he is disbarred from the bar of this Commonwealth, and he shall comply with all the provisions of Rule 217 Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.